FILED
Clerk
District Court

JUL 2 8 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ERIC JOHN TUDELA MAFNAS and<br>CHARLEY K. PATRIS<br><br>　　　　Defendants. | Criminal Case No. CR 04 00038<br><br>SUPERSEDING INDICTMENT<br><br>Count 1<br>Title 18, U.S.C., § 371 - Conspiracy to Commit Theft, Perjury, and to Make False Statements<br><br>Count 2<br>Title 18, U.S.C. § 666 - Theft Concerning Programs Receiving Federal Funds<br><br>Count 3<br>Title 21, U.S.C. §§ 846, 841(a)(1), 841(b)(1)(b), and 860 - Conspiracy to Distribute and Possess With Intent to Distribute a Controlled Substance<br><br>Count 4<br>Title 21, U.S.C. §§ 841(a)(1) & 841(b)(1)(B) - Possession With Intent To Distribute a Controlled Substance<br><br>Counts 5 and 6<br>Title 18, U.S.C. § 1001 - False Statements<br><br>Counts 7 and 8<br>Title 18, U.S.C. § 1623 - Perjury<br><br>Count 9<br>Title 18, U.S.C. § 3 - Accessory After the Fact |

THE GRAND JURY CHARGES:

## COUNT 1

### CONSPIRACY TO COMMIT THEFT, PERJURY AND TO MAKE FALSE STATEMENTS

#### Relevant Persons and Entities

1. At all times relevant to this Superseding Indictment, the Commonwealth of the Northern Mariana Islands ("CNMI") was a commonwealth in political union with the United States of America and a territory and possession thereof. The CNMI government received in excess of $10,000 in federal funds in each one-year period relevant hereto.

2. At all times relevant to this Indictment, the CNMI Department of Public Safety ("DPS"), pursuant to Article I of the Commonwealth Code, was a department of the CNMI government composed of a police force, fire service and a corrections service. Among other duties, DPS was charged with providing effective police protection to the inhabitants of the CNMI. DPS received in excess of $10,000 in federal funds in each one-year period relevant hereto.

3. At all times relevant to this Indictment, there was within DPS a Special Investigation Section ("SIS") of the police force comprised of DPS detectives and officers working together with an officer of the CNMI Division of Customs Service. SIS investigated criminal offenses relating to controlled substance possession and distribution.

4. At all times relevant to this Indictment defendant, ERIC JOHN TUDELA MAFNAS, was a DPS detective assigned to SIS. MAFNAS' principal responsibility at SIS was to investigate drug crimes.

5. At all times relevant to this Indictment defendant, CHARLEY K. PATRIS, was a DPS detective assigned to SIS and was the SIS supervisor. PATRIS's principal responsibility at SIS was to investigate drug crimes.

-2-

6. At all times relevant to this Indictment, the Attorney General's Investigative Unit ("AGIU") was a law enforcement unit within the CNMI Attorney General's Office. Among other responsibilities, AGIU dispensed United States currency to CNMI law enforcement officers, including officers assigned to SIS, for use in conducting drug investigations.

## The Conspiracy

7. From in or about April 2002, continuing to in or about December 2003, in the District of the Northern Mariana Islands and elsewhere, the defendants, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, together and with others known and unknown to the grand jury, unlawfully, wilfully and knowingly combined, conspired, confederated, and agreed to commit offenses against the United States, to wit, to commit theft concerning programs receiving federal funds, in violation of Title 18, United States Code, Section 666; to make false declarations before a grand jury, in violation of Title 18, United States Code, Section 1623; and to make false statements, in violation of Title 18, United States Code, Section 1001.

8. As a part and object of said conspiracy the defendants, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, unlawfully, wilfully and knowingly, while agents of DPS, a department of the CNMI government, which received in excess of $10,000 in federal funding annually, would and did embezzle, steal, obtain by fraud, and otherwise without authority knowingly convert to the use of persons other than the rightful owner and intentionally misapply, property that was valued at $5,000 and more and was owned by, and was under the care, custody, and control of such organization, government and agency, in violation of Title 18, United States Code, Section 666.

9. It was further a part and object of said conspiracy that the defendants, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, unlawfully, wilfully and knowingly, under oath during testimony before a grand jury of the United States, would and did make false material declarations, in violation of Title 18, United States Code, Section 1623.

10. It was further a part and object of said conspiracy that the defendants, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, and their co-conspirators, in a matter within the jurisdiction of the executive branch of the government of the United States, unlawfully, knowingly and willfully, would and did falsify, conceal, and cover up by trick, scheme, and device a material fact, and make materially false, fictitious, and fraudulent statements and representations, in violation of Title 18, United States Code, Section 1001.

## Means and Methods Of The Conspiracy

11. Among the means and methods by which the defendants, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, together with others known and unknown, would and did carry out the conspiracy were the following:

    a. ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, abused their positions as CNMI law enforcement officers by stealing from DPS property, including cash and evidence, valued in excess of $5,000.

    b. ERIC JOHN TUDELA MAFNAS, CHARLEY K. PATRIS, and their co-conspirators, identified and exploited weaknesses in DPS's controls and procedures with respect to the custody of evidence and record-keeping to both further and conceal their theft of property from DPS, including property that had been seized from persons in the course of SIS investigations. As MAFNAS and PATRIS well knew, such weaknesses permitted them to steal property from DPS with minimal risk of detection.

    c. ERIC JOHN TUDELA MAFNAS, CHARLEY K. PATRIS, and their co-conspirators, for the purpose of furthering and concealing their unlawful activities, prepared and filed materially false and misleading reports with respect to DPS investigations and caused official DPS records to be false and misleading.

    d. ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, for the purpose of furthering and concealing their unlawful activity, purposely failed to file required DPS reports with respect to actions undertaken, including reports with respect to evidence seized, controlled buys conducted and persons arrested.

e. ERIC JOHN TUDELA MAFNAS, CHARLEY K. PATRIS, and their co-conspirators, converted to their own use funds entrusted to them by DPS and AGIU.

f. ERIC JOHN TUDELA MAFNAS, CHARLEY K. PATRIS, and their co-conspirators, provided materially false and misleading statements to agents of the Federal Bureau of Investigation.

g. ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS gave materially false and misleading testimony before a federal grand jury investigating their activities.

### Overt Acts

12. In furtherance of said conspiracy and to effect the illegal objects thereof, the defendants, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, and their co-conspirators, committed the following overt acts, among others, in the District of the Northern Mariana Islands:

a. On or about April 29, 2002, the defendants, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, and others, arrested an ice trafficker ("Drug Dealer No. 1") and seized approximately $2530 in cash and approximately $300 worth of methamphetamine, in the form commonly known as "ice."

b. On or about April 30, 2002, defendant, ERIC JOHN TUDELA MAFNAS, falsely told DPS Division of Corrections officials that Drug Dealer No. 1 was a "DEA detainee," which permitted MAFNAS to have Drug Dealer No. 1 released the next day without creating an official DPS record of the arrest.

c. On or about April 30, 2002, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS stole from DPS approximately $2530 in cash that had been seized from Drug Dealer No. 1.

d. On or about December 31, 2002, defendant, ERIC JOHN TUDELA MAFNAS, acquired evidence, including marijuana, that had been seized during a vehicle stop, and failed to place such evidence with the DPS evidence custodian.

    e. On or about May 13, 2003, defendant, ERIC JOHN TUDELA MAFNAS, took from the DPS evidence room approximately 46 grams of methamphetamine, in the form commonly known as "ice," that had been seized from Manabu Chizuwa.

    f. On or about June 23, 2003, defendant, ERIC JOHN TUDELA MAFNAS, received $1000 from AGIU for use in drug investigations.

    g. On or about November 7, 2003, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS stole approximately $3,220 that had been seized from a person arrested for ice trafficking ("Drug Dealer No. 2").

    h. On or about November 8, 2003, defendant, CHARLEY K. PATRIS, falsely stated in a DPS report that both he and another SIS officer had, on November 7, 2003, witnessed ERIC JOHN TUDELA MAFNAS count the cash seized from Drug Dealer No. 2.

    i. On or about December 22, 2003, defendant, ERIC JOHN TUDELA MAFNAS, falsely told agents of the Federal Bureau of Investigation that approximately 46 grams of ice that had been seized as evidence in the local prosecution of Manabu Chizuwa had been burned and destroyed pursuant to authorization provided to MAFNAS by a CNMI Assistant Attorney General.

    j. On or about December 22, 2003, defendant, CHARLEY K. PATRIS, falsely told agents of the Federal Bureau of Investigation that he had seen a letter written by a CNMI Assistant Attorney General authorizing the destruction of approximately 46 grams of ice that had been seized as evidence in the local prosecution of Manabu Chizuwa.

    k. On or about December 29, 2003, defendant, ERIC JOHN TUDELA MAFNAS, while under oath before a federal grand jury in the District of the Northern Mariana Islands, falsely claimed to have burned the ice seized during the investigation of Manabu Chizuwa.

1.   On or about December 29, 2003, defendant, CHARLEY K. PATRIS, while under oath before a federal grand jury in the District of the Northern Mariana Islands, falsely claimed to have witnessed the burning of the ice seized during the investigation of Manabu Chizuwa.

This is a violation of Title 18, United States Code, Section 371.

THE GRAND JURY FURTHER CHARGES:

## COUNT 2

## THEFT CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS

13.   The grand jury re-alleges, adopts, and incorporates by reference herein, the allegations contained in paragraphs one (1) through twelve (12) as if fully set forth herein.

14.   From about April 2002 through about December 2003, in the District of the Northern Mariana Islands and elsewhere, the defendants, ERIC JOHN TUDELA MAFNAS and CHARLEY K. PATRIS, being agents of a State agency, namely, the CNMI Department of Public Safety, an agency that received in excess of $10,000 in federal funding annually, unlawfully, knowingly and intentionally, embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to the use of persons other then the rightful owner, and intentionally misapplied, property that was valued at $5,000 and more, owned by, and under the care, custody, and control of the CNMI Department of Public Safety, namely, MAFNAS and PATRIS embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to their own use cash and property from DPS worth more than $5,000.

This is a violation of Title 18, United States Code, Sections 666(a)(1) and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT 3

### CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE

15. Between about June, 2002 and February, 2004, in the District of the Northern Mariana Islands and elsewhere, defendant, ERIC JOHN TUDELA MAFNAS, did knowingly and unlawfully combine, conspire, confederate and agree with others known and unknown to the grand jury, to distribute and possess with intent to distribute 5 grams or more of methamphetamine in the form commonly known as "ice", a Schedule II controlled substance, in violation of Title 21, United States Code Sections 841 (a)(1), and 841 (b)(1)(B). As part of and in furtherance of the conspiracy, the defendant distributed methamphetamine, in the form commonly known as "ice", within 1000 feet of the real property comprising San Antonio Elementary School, a public elementary school located in Saipan, CNMI, in violation of Title 21, United States Code, Section 860.

This is a violation of Title 21, United States Code, Section 846.

THE GRAND JURY FURTHER CHARGES:

## COUNT 4

### POSSESSION WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE

16. From on or about May 12, 2003 until a date unknown, in the District of the Northern Mariana Islands, defendant, ERIC JOHN TUDELA MAFNAS, did knowingly and intentionally possess with intent to distribute, approximately 46 grams of methamphetamine, in the form commonly known as "ice," a Schedule II controlled substance.

This is a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

THE GRAND JURY FURTHER CHARGES:

## COUNT 5

### FALSE STATEMENTS

17. The grand jury realleges, adopts, and incorporates by reference herein, the allegations contained in paragraphs one (1) through twelve (12) as if fully set forth herein.

18. On or about December 22, 2003, defendant, ERIC JOHN TUDELA MAFNAS, in a matter within the jurisdiction of the executive branch of the government of the United States, namely, within the jurisdiction of the Federal Bureau of Investigation, unlawfully, knowingly and willfully, falsified, concealed, and covered up by trick, scheme, and device a material fact, and made materially false, fictitious, and fraudulent statements and representations, namely, ERIC JOHN TUDELA MAFNAS, the defendant, in response to questioning by agents of the Federal Bureau of Investigation, falsely stated that he had received authorization, both orally and in writing, from a CNMI Assistant Attorney General to destroy approximately 46 grams of methamphetamine that had been seized as evidence on or about May 3, 2002 from Manabu Chizuwa.

This is a violation of Title 18, United States Code, Section 1001.

THE GRAND JURY FURTHER CHARGES:

## COUNT 6

### FALSE STATEMENTS

19. The grand jury re-alleges, adopts, and incorporates by reference herein, the allegations contained in paragraphs one (1) through twelve (12) as if fully set forth herein.

20. On or about December 22, 2003, defendant, CHARLEY K. PATRIS, in a matter within the jurisdiction of the executive branch of the government of the United States, namely, within the jurisdiction of the Federal Bureau of Investigation, unlawfully, knowingly and willfully, falsified, concealed, and covered up by trick, scheme, and device a material fact, and made materially false, fictitious, and fraudulent

1  statements and representations, namely, CHARLEY K. PATRIS, the defendant, in
2  response to questioning by agents of the Federal Bureau of Investigation, falsely stated
3  that a CNMI Assistant Attorney General had authorized the destruction of approximately
4  46 grams of methamphetamine that had been seized on or about May 3, 2002 from
5  Manabu Chizuwa.
6      This is a violation of Title 18, United States Code, Section 1001.
7  THE GRAND JURY FURTHER CHARGES:

## COUNT 7
## PERJURY

10      21.    The grand jury re-alleges, adopts, and incorporates by reference
11  herein, the allegations contained in paragraphs one (1) through twelve (12) as if fully set
12  forth herein.
13      22.    On or about December 29, 2003, defendant, ERIC JOHN TUDELA
14  MAFNAS, unlawfully, wilfully and knowingly, under oath during testimony before a
15  grand jury of the United States, made false material declarations, namely, the following
16  testimony, among other false testimony, the underlined portions of which he knew to be
17  materially false:

18      a.    Q:    Whose idea was it to destroy this evidence?
19      A:    I got the approval from at that time the drug –
20      Q:    That's not the question. The question is whose idea
21      was it?
22      A:    To destroy?
23      Q:    Yeah.
24      A:    <u>The, ah drug prosecutor at that time si Don Wolfe.</u>
25      Q:    It was his idea?
26      A:    <u>He was the one who informed me to destroy it.</u>
27      Q:    He told you to destroy it?
28      A:    <u>That's correct.</u>

|   |   |    |    |
|---|---|----|----|
| b. | Q: | He told you orally to destroy the ice? |
|    | A: | <u>He told me ah – yes, he did tell me orally and then he wrote a – typed a letter out for that.</u> |
| c. | Q: | But you say you had a letter as well from Don Wolfe, right? |
|    | A: | From Don Wolfe, yes, sir. |
|    | Q: | When? What was the date on that letter? |
|    | A: | I don't recall the exact date on that letter. |
|    | Q: | Who was it addressed to? |
|    | A: | To the evidence custodian, ah Jun Taimanao, Johannes Taimanao. |
|    | Q: | What did it say? |
|    | A: | <u>Word for word I don't recall, but I do recall that it says something to the effect of, ah authorizing the release of the evidence for disposal.</u> |
|    | Q: | What evidence? |
|    | A: | <u>The ah, Chizuwa Manabu case.</u> |
| d. | Q: | Did you ask for that letter? |
|    | A: | He gave it to me after I informed him that, ah the drugs cannot be release without authorization from the AG. |
|    | Q: | And, it's just an authorization to release the drugs in connection with the case? Or an authorization to destroy the drugs, which was it? |
|    | A: | <u>To destroy the drugs.</u> |
|    | Q: | You're sure about that? |
|    | A: | <u>Yes, sir?</u> |

This is a violation of Title 18, United States Code, Section 1623.

THE GRAND JURY FURTHER CHARGES:

## COUNT 8
### PERJURY

23. The grand jury re-alleges, adopts, and incorporates by reference herein, the allegations contained in paragraphs one (1) through twelve (12) as if fully set forth herein.

24. On or about December 29, 2003, defendant, CHARLEY K. PATRIS, unlawfully, wilfully and knowingly, under oath during testimony before a grand jury of the United States, made false material declarations, namely, the following testimony, among other false testimony, the underlined portions of which he knew to be materially false:

a. Q: Did you participate in any way with Eric Mafnas in signing out the Chizuwa ice, the 63.5 grams of ice, out of the evidence in May of 2003??

A: No, sir.

Q: That was Eric, not you?

A: No, sir. Ah Eric, yeah, that's right?

Q: And you had no role in that at all?.

A: Signing out the evidence, no sir.

Q: Did you know he was signing it out?

A: Yes, sir.

Q: How did you know? What did he tell you?

A: <u>Because ah, when we finish from the AG that day, when we went back, there was a letter, ah, that it was given to us for him to procure the evidence</u>

Q: When you went back to where?

A: To – when we walked back to CIB office.

Q: The letter was already there?

-12-

THE GRAND JURY FURTHER CHARGES:

## COUNT 8
### PERJURY

23. The grand jury re-alleges, adopts, and incorporates by reference herein, the allegations contained in paragraphs one (1) through twelve (12) as if fully set forth herein.

24. On or about December 29, 2003, defendant, CHARLEY K. PATRIS, unlawfully, wilfully and knowingly, under oath during testimony before a grand jury of the United States, made false material declarations, namely, the following testimony, among other false testimony, the underlined portions of which he knew to be materially false:

a. Q: Did you participate in any way with Eric Mafnas in signing out the Chizuwa ice, the 63.5 grams of ice, out of the evidence in May of 2003??

A: No, sir.

Q: That was Eric, not you?

A: No, sir. Ah Eric, yeah, that's right?

Q: And you had no role in that at all?.

A: Signing out the evidence, no sir.

Q: Did you know he was signing it out?

A: Yes, sir.

Q: How did you know? What did he tell you?

A: <u>Because ah, when we finish from the AG that day, when we went back, there was a letter, ah, that it was given to us for him to procure the evidence</u>

Q: When you went back to where?

A: To – when we walked back to CIB office.

Q: The letter was already there?

-12-

|   |   |   |
|---|---|---|
| 1 | A: | We were walking together and we had the letter. |
| 2 | Q: | You had the letter? |
| 3 | A: | Yes. |
| 4 | Q: | Who gave it to you? |
| 5 | A: | Don Wolfe gave it to Eric. |
| 6 | Q: | Were you present when Don Wolfe gave it to Eric? |
| 7 | A: | I was in the hallway when they were talking about it and then when Eric finished talking to Don Wolfe, he came out, we walked out from the AG, there was a letter he was holding. |
| 11 | Q: | Who raised the question of destroying evidence first, you? Eric Mafnas? Or Don Wolfe? |
| 13 | A: | I don't remember, sir. |
| 14 | Q: | Well, what you're telling us is at the end of this meeting, the next thing you know there's a letter saying to destroy the evidence, correct? |
| 17 | A: | There's a letter for Eric to procure the evidence |
| 18 | Q: | To procure the evidence? Or to . . . |
| 19 | A: | Yes. |
| 20 | Q: | . . .destroy the evidence? |
| 21 | A: | To procure. Ah during that – ah when Eric talked to Don Wolfe in there, they were talking about the evidence and then I over heard them talking about the evidence? |
| 25 | Q: | Well, procure is very different from destroy, correct? |
| 26 | A: | Ah yes, sir, but the conversation . . . |
| 27 | Q: | Procure means - - - |

-13-

A:   <u>. . . that I overheard in the AG's Office was about des –</u>
<u>destroying evidence, about disposing of - - there's the</u>
<u>word, disposing evidence. That's what I heard</u>.

This is a violation of Title 18, United States Code, Section 1623.

THE GRAND JURY FURTHER CHARGES:

### COUNT 9

### ACCESSORY AFTER THE FACT

25.   Between about December, 2003 and February 2004, in the District of the Northern Mariana Islands, defendant, CHARLEY K. PATRIS, knowing that an offense or offenses against the government had been committed, to wit, conspiracy to distribute and possess with intent to distribute methamphetamine; and possession with intent to distribute methamphetamine, which are violations of Title 21, United States Code Sections 846, 841 (a)(1), and 841(b)(1)(B), did assist and attempt to assist offender(s), ERIC JOHN TUDELA MAFNAS, and others known and unknown, in order to hinder and prevent the offenders' apprehension, trial and punishment.

This is a violation of Title 18, United States Code, Section 3.

DATED this 28th day of July, 2005.

A TRUE BILL.

_____
Foreperson

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

By: _____
JAMIE D. BOWERS
Assistant United States Attorney